# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

AMY MILLER,                                    )
                                               )
    Plaintiff,                         )
                                               )
    v.                                 )    Case No. 4:16-CV-01292 JAR
                                               )
NANCY A. BERRYHILL,[1]                         )
Acting Commissioner of Social Security,        )
                                               )
    Defendant.                         )
                                               )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Amy Miller's ("Miller") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

### I.    Background

Miller applied for disability insurance benefits and supplemental security income benefits on April 23, 2013, alleging disability as of September 20, 2012 resulting from an injury to her left wrist and lumbar spinal pain. After her application was denied at the initial administrative level, she requested a hearing before an administrative law judge ("ALJ"). Following a hearing on January 26, 2015, the ALJ issued a written decision on April 29, 2015, denying her application. Miller's request for review by the Appeals Council was denied. Thus, the decision of

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.     Facts

The Court adopts Miller's Statement of Material Facts (Doc. No. 24) and Defendant's Statement of Additional Material Facts (Doc. No. 29-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III.    Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the "paragraph B criteria"). § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a

minimal impact on [his or] her ability to work." <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. <u>Id</u>.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." <u>Moore v. Astrue</u>, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); <u>McCoy v. Astrue</u>, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. <u>Id</u>.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. <u>Brantley</u>, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. <u>Id</u>. "The ultimate burden of persuasion to prove disability,

however, remains with the claimant." <u>Meyerpeter v. Astrue</u>, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV.    Decision of the ALJ

The ALJ found Miller had the severe impairments of degenerative disc disease of the lumbar spine, osteoporosis, chronic obstructive pulmonary disease/chronic bronchitis/emphysema, and migraine headaches, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. After considering the entire record, the ALJ determined that Miller had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that she can only occasionally climb ramps and stairs, stoop, kneel, and crouch; never climb ladders, ropes, or scaffolds or crawl; and only occasionally be exposed to vibration. The ALJ further determined that Miller can frequently use her left upper extremity for fine and gross manipulation and would need to alternate between sitting and standing one to three minutes for every hour but would remain at the workstation.

The ALJ found Miller unable to perform any of her past relevant work as a kitchen helper, cleaner, quality control technician, and injection molding machine tender, but that considering her age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as officer helper, photocopy machine operator, and furniture rental consultant. Thus, the ALJ found Miller was not disabled as defined by the Act.

## V.    Discussion

In her appeal of the Commissioner's decision, Miller argues the ALJ erred by failing to account for her absenteeism in the RFC (Doc. No. 22 at 7-8). Miller contends she must seek

treatment numerous times throughout the year for her impairments, in addition to the time she would be absent from work due to the impairments themselves, such as migraines and pain. In 2012, Plaintiff treated with medical providers at least 11 times during the relevant period (Tr. 285-303, 310, 337, 342, 352, 361, 408, 462, 496, 498). She saw treatment providers three times in October 2012 (Tr. 285-303), and five times in November 2012 (Tr. 310, 342, 352, 496, 498). In 2013, Miller sought treatment "at least" 17 times (Tr. 323, 327, 330, 333, 350, 354, 356, 381, 496, 512, 547, 554, 561, 617-619). Miller argues this absenteeism is directly caused by her impairments, and that the ALJ is, therefore, required to include it in her RFC determination. Miller also notes the vocational expert's testimony that a rate of absenteeism in excess of two days per month would preclude competitive employment (Tr. 65-66). The Commissioner responds that the ALJ properly determined Miller's RFC after evaluating the medical evidence and Miller's credibility. (Doc. No. 29 at 4-13).

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

**Credibility**

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Miller's credibility was essential to her determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002) (same). Here, the ALJ found Miller's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible in that they are not supported by the medical record evidence (Tr. 20-27).

In evaluating a claimant's credibility, the ALJ is required to apply the factors from Polaski, 739 F.2d at 1322, which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified several reasons for discounting Miller's credibility. First, the ALJ found Miller's medical treatment records did not support the severity of her allegations regarding her impairments and symptoms (Tr. 26). In April and August 2012, prior to her onset date, Miller exhibited a normal range of motion in her musculoskeletal system, with no tenderness or edema (Tr. 399, 420). The ALJ found these records "do not underscore escalating spinal symptoms that led to symptoms as severe as of September 20, 2012 that the claimant stopped working then. These records contradict the claimant's allegation that she stopped working as of her alleged onset date because of her conditions." (Tr. 23-24). In October 2012, after Miller stopped working and filed her applications for benefits, a physical therapist observed that her allegations about her "worst" wrist pain appeared "somewhat high" in comparison to what the therapist observed during treatment (Tr. 204, 285).

In November 2012, Miller saw Colleen Glisson, M.D., for reported left wrist pain (Tr. 496). Upon examination, Dr. Glisson observed that Miller was not in acute distress and displayed few wrist symptoms, with full flexion and extension of the wrists to 75 degrees, and full pronation and supraspination (Tr. 497). A magnetic resonance imaging (MRI) scan performed on November 19, 2012 indicated mild radiocarpal and mild to moderate osteoarthritis in the triscaphe and first carpometacarpal joint, along with mild bone edema in the triscaphe joint and no significant tendinopathy (Tr. 310). When Miller was reexamined on November 29, 2012, Dr. Glisson noted that Miller again displayed no acute distress or obvious swelling, deformity, or atrophy in the wrist, although she had some tenderness (Tr. 498). Miller had intact sensation in her median, radial, and ulnar nerves, although she had a positive Phalen maneuver (Tr. 498). Dr. Glisson opined there was no evidence of any tear or significant inflammation, and recommended a corticosteroid injection to the left wrist and the continued use of a wrist splint (Tr. 499). After

two injections, Dr. Glisson returned Miller to work without restriction on March 11, 2013 (Tr. 500).

In February 2013, Miller complained of rib pain to David A. Poggemeier, M.D. and again displayed normal range of motion in her spine and extremities with no tenderness or edema (Tr. 447). X-rays of Miller's lumbar spine taken in April 2013 were normal with no fracture, normal disc spaces, and normal spinal alignment, and an MRI revealed only mild degenerative changes and mild stenosis (Tr. 453-55). In March 2013, Miller reported to a physical therapist that her lumbar spine caused no limitations in her activities of daily living (Tr. 384).

On May 16, 2013, Ravindra Shitut, M.D., conducted an examination related to Miller's alleged back pain (Tr. 505). Dr. Shitut recorded Miller's statement that "she had low back pain for the last 30 years" that had recently worsened (Tr. 505). Dr. Shitut noted that Miller had mild stiffness in her lower back, particularly with flexion, but that she had no limitations to her capacity to walk (Tr. 507). Straight leg raise tests were negative, and her sensory, motor, and reflex examination was normal, with no obvious atrophy (Tr. 507). Dr. Shitut reviewed Miller's lumbar MRI, noted mild degenerative changes, and observed a degenerative bulge at T12-L1 "of questionable clinical significance" (Tr. 507). Dr. Shitut remarked, "[o]verall, I am fairly unimpressed with" Miller's complaints of back pain and recommended only conservative treatment, including long-term exercise, weight control, and smoking cessation (Tr. 505). No follow up appointments were scheduled. The ALJ observed that "the overall tenor of the notes from this visit indicates the possibility of claimant symptom exaggeration." (Tr. 24).

On August 14, 2013, Shawn L. Berkin, D.O., performed an independent medical examination of Miller (Tr. 512-20). At that time, Miller reported weakness to her left wrist and difficulty gripping; she rated her left wrist pain at an intensity level of one to two, on a scale of

ten (Tr. 514). After summarizing her subjective complaints and medical history, Dr. Berkin noted that upon examination, Miller had no swelling or deformity in the left hand elbow or wrist but displayed localized medial tenderness, and had numbness in her left little finger (Tr. 516). Miller had full flexion and extension in her left elbow, and normal bicep, tricep, and brachioradialis reflexes of both upper extremities (Tr. 516). Despite limited range of motion in her lumbar spine, straight leg raise tests were negative for lower back pain or radicular pain, and Miller displayed normal lower extremity muscle bulk and tone (Tr. 517).

Dr. Berkin opined that Miller had a left wrist strain with irritation of the triangular fibrocartilage complex caused in September 2012 when she lifted a load of books, causing her left wrist to pop (Tr. 518). He recommended only conservative treatment, including the use of a wrist splint, exercises, and anti-inflammatory medications (Tr. 519). According to Dr. Berkin, this injury was the direct and proximate cause of a permanent partial disability of 20% of the left upper extremity at the level of the wrist (Id.). As for Miller's chronic low back condition, Dr. Berkin reported a preexisting permanent partial disability of 20% of the body as a whole at the level of the lumbosacral spine, which represented a hindrance or obstacle to employment or reemployment at the time of the September 2012 injury involving her left wrist. He opined that the combination of these two disabilities is greater than their sum and that a loading factor should be applied. (Id.)

In terms of treatment recommendations, Dr. Berkin directed Miller to avoid excessive gripping, pinching, pulling, twisting, or reaching with her left hand for extended periods of time; avoid torque-like or high-impact stresses to her hand; and limit her exposure to operating power tools or vibratory equipment (Tr. 519). Dr. Berkin also stated that Miller should pace herself if required to perform hand-intensive activities for extended periods of time and take frequent

breaks to avoid exacerbation of her symptoms or further injury to her left hand and wrist (Id.). With respect to her lower back, Dr. Berkin recommended that Miller should avoid excessive squatting, kneeling, stooping, turning, twisting, lifting, and climbing (Tr. 520). He recommended anti-inflammatory medications and muscle relaxants as needed for her symptoms as well as stretching, range of motion and muscle strengthening exercises to improve her strength and endurance, and preserve her current level of unction (Id.). The ALJ gave Dr. Berkin's opinion great weight, and Miller has not challenged the weight given to this opinion (Tr. 26).

In September 2013, Najma Lokhandwala, M.D., observed that despite Miller's complaints of neck stiffness, anxiety, and depression, she had normal musculoskeletal and neurological function and displayed appropriate mood and affect (Tr. 541). Dr. Lokhandwala opined that Miller did not qualify for disability benefits (Tr. 526). Similarly, in February 2014, Dr. Lokhandwala's physical and psychiatric examination of Miller was normal (Tr. 528-29).

In April 2014, Jamie Tueth, D.O., conducted a normal mental examination of Miller (Tr. 640). In September 2014, consultative examiner, Thomas Spencer, Psy.D., observed Miller had no hygiene or grooming impairments and that she had intact judgment and insight (Tr. 688). He assessed Miller with depressive disorder, and indicated that any mental impairment only marginally interfered with her ability to engage in employment, and was situational in nature (Tr. 690). The ALJ gave great weight to Dr. Spencer's opinion, and Miller does not contest the weight given to this opinion in her brief (Tr. 20).

In sum, the objective medical evidence of record and medical opinions do not support Miller's subjective allegations. During several examinations by treating physicians, Miller exhibited few symptoms and appeared to be in no significant distress (Tr. 204, 285, 447, 497-98, 505, 507, 512-20, 526, 528-29, 541). One such examination revealed that Miller had full flexion

and extension of the wrists (Tr. 497). A subsequent MRI confirmed mild to moderate osteoarthritis in the left wrist and no significant tendinopathy (Tr. 310). An examination related to Miller's alleged back pain showed mild degenerative changes and a degenerative disc bulge "of questionable clinical significance" (Tr. 507). The absence of an objective medical basis to support the degree of subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. See Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002)); 20 C.F.R. §§ 404.1529(c) & 416.929(c). See also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider).

The ALJ also considered that Miller has not worked for more than half of her adult life, and her longest period of employment was 16 months. (Tr. 26; 687). A poor work history can lessen a claimant's credibility. Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993); see also Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004) (holding that the claimant was properly discredited due, in part, to her sporadic work record, reflecting poor earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability."); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms).

Further, the ALJ found Miller was not significantly limited in her daily activities (Tr. 26). Miller reported she was able to care for pets, perform housework, handle her personal care, and prepare meals. (Tr. 235-38) She maintains regular contact with her children and spends the day cleaning her house, running errands and playing computer games (Tr. 239). She shops for

groceries by herself and engages in hobbies requiring significant hand use, i.e., sewing, quilting, crocheting and crafting (Tr. 516). An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility." Chaney v. Colvin, 812 F.3d 672, 677 (8th Cir. 2016) (quoting Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)); see also Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with claimant's complaints of disabling pain). To be sure, the ability to engage in these kinds of activities alone is insufficient reason to discredit Miller's subjective complaints. See Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996). But the extent of her activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases).

Lastly, the ALJ noted that Miller's records suggested elements of secondary gain motivation in her application for disability benefits (Tr. 27). Miller saw a psychiatrist in February 2014 and stated that she wanted to get her claim for disability benefits filed and was advised to see a psychiatrist as part of her claim (Tr. 526). Dr. Lokhandwala examined Miller and opined that she did not qualify for disability. (Tr. 526-29). The Eighth Circuit has recognized that an ALJ may consider a claimant's financial motivation to qualify for benefits while assessing the credibility of a claimant's subjective pain complaints. See, e.g., Ramirez, 292 F.3d at 581-82 n. 4; Gaddis v. Chater, 76 F.3d 893, 895-96 (8th Cir. 1996) (finding that ALJ properly discounted credibility of claimant who was financially motivated to seek disability benefits).

In summary, the Court finds the ALJ considered Miller's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility.

Because the ALJ's determination is supported by good reasons and substantial evidence, the Court defers to her determination. Cobb v. Colvin, No. 2:13CV0115 TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski, 739 F.2d at 1322.

**RFC**

Miller relies on Baker v. Apfel, 159 F.3d 1140 (8th Cir. 1998), in support of her argument that this matter should be remanded because the ALJ failed to consider her absenteeism in determining her RFC (Doc. No. 22 at 7). In Baker, the plaintiff's treating physician opined that plaintiff would "miss a great deal of work." Id. at 1146. The physician's opinion was supported by "page after page of medical records detailing [plaintiff's] injections of Demerol, after which he must be driven home by someone else due to the effects of the drug." Id. The record also established that plaintiff received 60 Demerol injections over the course of six months, and would be absent at least twenty-six days during the year. Id. Because the ALJ failed to consider that plaintiff would be absent from the workplace to receive these injections, the Eighth Circuit reversed and remanded the case.

Unlike the record in Baker, there is no objective evidence that Miller would "miss a great deal of work," or that her condition required aggressive treatment, such as injections. Moreover, Miller's representation that she would exceed the two day per month limit outlined by the vocational expert is not supported by the record. For these reasons, the Court finds the ALJ's decision not to include absenteeism in the RFC is supported by substantial evidence in the record. See Blackburn v. Berryhill, No. 16-3140-CV-S-ODS, 2017 WL 1968320, at *3 (W.D. Mo. May 12, 2017) (plaintiff's representation that she would miss 1.5 days of work per month was not supported by objective medical evidence); see also Jeffries v. Berryhill, No. 4:16 CV 18 JMB, 2017 WL 365439, at *6 (E.D. Mo. Jan. 25, 2017) ("Although Plaintiff argues that it is

'incontrovertible' that she will miss numerous days, the record does not support this argument and substantial evidence supports the ALJ's RFC determination. At best, Plaintiff proved how many times she has visited a doctor, but she did not show that each doctor's visit would result in her missing an entire day of work."); <u>Michel v. Astrue</u>, No. 4:10CV3258, 2011 WL 6078148, at *7 (D. Neb. Dec. 7, 2011) (unpublished) (affirming ALJ decision where "there is no evidence Plaintiff has had any problems with absenteeism," despite physician prediction that claimant would be absent more than four times per month).

Furthermore, the ALJ did not simply adopt a light work RFC wholesale. Instead, she determined Miller's RFC after careful consideration of all the relevant evidence, and properly incorporated only those impairments and restrictions found credible. <u>See</u> <u>McGeorge v. Barnhart</u>, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). As discussed above, there is substantial evidence in the record as a whole to support the ALJ's determination that Miller was capable of performing light work, with some restrictions that did not include absenteeism.

**Conclusion**

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 24th day of August, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**